Domer SCARAMUCCI

v.

**UNIVERSAL MANUFACTURING COMPANY, Inc.**

Civ. A. No. 8305.

United States District Court
W. D. Louisiana,
Shreveport Division.

April 23, 1964.

A. R. Carmody, Jr., Wilkinson, Lewis, Woods & Carmody, Shreveport, La., Jerry J. Dunlap, Dunlap, Laney & Hubbard, Oklahoma City, Okl., for plaintiff.

Isaac Abramson, Wilson, Abramson, Maroun & Kaplan, Shreveport, La., J. Matthew Neale, Strauch, Nolan & Neale, Washington, D. C., for defendant.

BEN C. DAWKINS, Jr., Chief Judge.

This action, claiming patent infringement, arises under the United States Patent Laws, 35 U.S.C. § 1 et seq., particularly § 271; and jurisdiction properly is invoked under 28 U.S.C. §§ 1338 and 1400.

Plaintiff, Domer Scaramucci, an engineer, resident and practicing his profession in Oklahoma City, contends that Claims 1, 4 and 5 of United States Patent No. 2,763,455, applied for December 16, 1952, and issued to him September 18, 1956, are being infringed by defendant, Universal Manufacturing Company, Inc., domiciled in this District.

Plaintiff normally engaged in oil field engineering activities, first as an employee and since 1950 in his own business under the trade name Machinery Equipment Company. To provide additional funds for his business of testing the structural strength of oil field pipe, he got into the swing set business in late 1950 or early 1951, but to a rather limited extent. In late 1953, he licensed his interests in this field to one Rollie Rose. Since about 1957 or 1958, neither they, nor anyone else, so far as the record shows, have manufactured swing sets utilizing the Scaramucci coupling defined in Patent 2,763,455.

Universal manufactures playgyms known under the trade name of "Gym-Dandy" in large quantities, under a license issued to it by Isadore Horowitz, who applied for Patent No. 2,904,359 November 7, 1957, which was issued September 15, 1959. Horowitz is President and principal stockholder of Universal. He has been in the playground equipment business since about 1940. The Patent Office expressly considered and cited Scaramucci Patent 2,763,455 when it granted Horowitz Patent 2,904,359.

The patent-in-suit and the accused device both relate to coupling devices designed to be used to join the horizontal top bar of a children's swing set with divergent legs located at each end of the top bar.

Plaintiff seeks the usual infringement relief of an injunction, accounting, damages, attorney's fees, costs and expenses. Defendant refutes the validity of plaintiff's patent, as having been plainly anticipated by the prior art, by obviousness or by lack of invention; and, alternatively, denies infringement.

■ It is common knowledge, of course, that playgym swings, frame constructions made up of a cross bar or top supported at its opposite ends by divergent leg structures through leg fittings or couplings, and having suspended therefrom one or more swing structures, have been in use for many decades. As such, these are in the public domain. It is the coupling devices alone which are the subject of this controversy. To illustrate accurately the differences between them, copies of these two patents are attached to this opinion,* including the diagrams submitted with the applications and claims as finally approved by the Patent Office.

As stated, only Claims 1, 4 and 5 of plaintiff's patent are involved, these reading as follows:

"1. A coupling for the ends of the horizontal top tube and divergent legs of swing frames, etc. comprising a single, one-piece, elongated sheet metal body notched at the center of one long side and configured to provide edges to closely receive and conform to a portion of the walls of the top tube along an irregular line substantially angled to the axis of the tube and adapted to be welded thereto along the engaging edges, said body sheet beyond said notch defining a pair of merging but divergent leg receiving sockets directed to hold the ends of the legs against said top tube opposite the edge connections thereto, and intervening webs edge connected to the sockets and overlying and spaced apart, and means to draw said webs toward each other to tension both sockets about the leg ends."

* See Appendix.

"4. For use in a frame for swings, etc. having a top tube, a pair of supporting divergent tubular legs and a connecting brace bar between the latter, the combination of a one-piece sheet metal coupling permanently fixed to the top tube adjacent to and covering one end thereof, said coupling having a shape to form a pair of divergent leg tube receiving sockets each substantially open where it faces the other, one edge of each opening being connected by a continuous web and each other edge having a web extending therefrom and overlapping that from the other, said continuous and overlapping webs being spaced apart and means to draw them toward each other to clamp the leg tubes and to simultaneously tend to reduce the angle of socket divergence whereby the brace bar is placed under compression."

"5. The device of claim 4 in which said coupling sheet is notched to receive and closely support the end portion of the top tube and means welding the edges of the notch to the walls of the top tube to integrate these parts."

■ The issuance of the patent-in-suit carries with it a presumption of validity. 35 U.S.C. § 282; Italit, Inc. v. Johns-Manville Corporation, 331 F.2d 663 (5 Cir., April 16, 1964). However, where the Patent Office has failed to consider the prior pertinent art, this statutory presumption of validity is greatly weakened.

As was stated in Rosaire v. Baroid Sales Division, National Lead Co., 218 F.2d 72 (5 Cir., 1955), where pertinent prior art was not considered, " * * * the patents were therefore greatly weakened and they lack the presumption of validity that would otherwise exist." To the same effect is The Murray Company of Texas, Inc. v. Continental Gin Co., 264 F.2d 65 (5 Cir., 1959): "The presumption of validity attends the grant of a patent and the burden of persuasion of invalidity is on the putative infringer. [Cases cited.] ˙The presumption is strengthened when it appears that the Patent Office has considered and distinguished the prior art relied on as anticipation. [Cases cited.] But where, as here, the Patent Office has failed to consider pertinent art, the statutory presumption of validity is greatly weakened."

Defendant has cited a number of prior patents, both domestic and foreign, containing significant features embodied in the claims at issue here. Two of these in particular, Bender No. 2,560,713 (1946–51) and Vincent No. 937,003 (French–1946), contain, respectively, the two most significant features of plaintiff's patent, namely, a welded attachment to a swing set top tube and divergent leg sockets for clampingly receiving the upper ends of divergent legs, with a connecting brace between the latter, and a single bolt actuated wrap-around type tube socket functioning in its new environment to grip the divergently related tube members, with a unitary coupling permanently fixed to the top tube adjacent to an end thereof.

■ The only impartial expert who testified in the case, Charles Fishleigh, who obviously was highly qualified, after discussing and illustrating in graphic detail the prior art relied on by defendant, gave it as his opinion that any qualified mechanic or engineer easily could have devised the coupling covered by the patent-in-suit from the well-known teachings of the prior art, by merely aggregating these teachings without producing any novel inventive faculty. Moreover, neither the Bender nor Vincent patent was considered by the Patent Office, in granting the patent-in-suit, thereby greatly weakening its otherwise presumed validity. For these reasons, and upon the basis of the jurisprudence herein cited, we believe and hold that the patent-in-suit is a mere unpatentable aggregation of the prior art rather than a patentable combination. Glikin v. Smith, 269 F.2d 641 (5 Cir., 1959); Anthony v. Ranco Incorporated, 316 F.2d 509 (5 Cir., 1963).

[4] Even if plaintiff's patent were deemed valid, he failed to establish the necessary substantial identity of function of defendant's structure and that called for by plaintiff's patent claims, or that defendant's structure obtained substantially the same result as his. In fact, according to Fishleigh's opinion, plaintiff's device was a step backward in the field, which quickly failed in use. This was amply shown in a courtroom demonstration.

Plaintiff's own testimony made it clear (1) that there was no compressive force exerted upon the brace bar when the coupling of defendant's swing structure was tightened; (2) that there was no holding of the leg tubes (plural) against the top tube in defendant's swing set; (3) that defendant's two laterally spaced webs connect respectively to one socket or the other but do not overlap one another to produce a second intervening web; (4) that defendant's coupling does not cover the end of the cross bar as does plaintiff's; and (5) that the sockets of defendant's coupling were substantially closed rather than substantially open where they face one another. Fishleigh found another major difference in that the two bolts of defendant's coupling were not a structural equivalent. He further found, correctly we think, no language in any of plaintiff's claims to serve as the basis for Figures 7 and 9 of the diagrams covering the patent, which appear to resemble somewhat the accused coupling, except that Figure 9 indicates a flap closing the end of the top bar.

To summarize, the great weight of the evidence in this case shows the following:

(1) That the patent to Scaramucci was granted by the Patent Office without consideration of any prior art disclosing a top tube welded leg coupling such as that used by defendant as early as 1940 and disclosed in the Bender patent 2,560,-713, cited by defendant, and without consideration of any prior art disclosing a pair of divergent sockets interconnected on their facing open sides by intervening spaced apart webs and employing a single bolt acting between the intervening webs to draw the webs together and tension the sockets around divergently related tube members to firmly grip the tubes disclosed by the French patent to Vincent 937,003 and that, therefore, Scaramucci patent 2,763,455 in suit stands before the Court without the customary presumption of validity.

(2) That in view of defendant's 1940 coupling and the Bender patent coupling, on the one hand, and the teaching of the French patent to Vincent 937,003, inventive ingenuity was not involved in arriving at a coupling structure and/or a swing set arrangement as defined in claims 1, 4 and 5 of the Scaramucci patent-in-suit.

(3) That claims 1, 4 and 5 of the Scaramucci patent-in-suit were limited by amendment during the prosecution of the application therefor to exclude from their coverage the coupling construction disclosed in Figure 9 of the Scaramucci patent-in-suit and a swing set or playgym made up of a top tube supported at its opposite ends by pairs of support legs connected to the top tube by such coupling whether or not the leg pairs were interconnected by a cross bar such as that disclosed at 24 in Figures 1 and 6 of the Scaramucci patent-in-suit.

(4) That claims 1, 4 and 5 of the Scaramucci patent-in-suit, when properly interpreted in light of the disclosure of the drawings and description thereof and the history of its prosecution before the Patent Office are limited in scope to such an extent that they cannot be held to be infringed by defendant's accused leg coupling or swing sets or playgyms using such a coupling.

For these reasons, therefore, there will be judgment for defendant, rejecting plaintiff's demands. Defendant

has prayed for the allowance of attorney's fees under 35 U.S.C. § 285, but we do not believe that this is such an "exceptional" case where such should be awarded.

A proper decree should be presented.

APPENDIX

Sept. 18, 1956     D. SCARAMUCCI     2,763,455

FRAME CONSTRUCTION FOR PLAYGYMS

Filed Dec. 16, 1952     2 Sheets-Sheet 1—

FIG.1.

FIG.2.

FIG.3.

FIG.4.

FIG.5.

INVENTOR.
Domer Scaramucci
BY Leech & Radue
ATTORNEYS

Sept. 18, 1956          D. SCARAMUCCI          2,763,455

FRAME CONSTRUCTION FOR PLAYGYMS

Filed Dec. 16, 1952                    2 Sheets—Sheet 2

FIG.6.

FIG.7.

FIG.8.

FIG.9.

FIG.10.

INVENTOR.

Domer Scaramucci

BY

Leech & Radue

ATTORNEYS