UNITED STATES of America and Jerome
I. Gulack, Special Agent, Internal
Revenue Service, Petitioners,

v.

William E. SCHOEBERLEIN, Respondent,
and

J. Stewart Brinsfield, Jr., and Evelyn
Brinsfield, his wife, Intervening
Respondents.

Misc. No. 709.

United States District Court,
D. Maryland.

Dec. 10, 1971.

---

George Beall, U. S. Atty., Leonard M. Linton, Jr., Asst. U. S. Atty., Baltimore, Md., and John Mullenholz, Trial Atty., Tax Division, Department of Justice, Washington, D. C., for petitioners.

H. Thomas Howell, Baltimore, Md., for respondent.

Marvin J. Garbis, Baltimore, Md., for intervening respondents.

THOMSEN, District Judge.

This is a proceeding brought by the United States and a Special Agent of the Internal Revenue Service (IRS) under §§ 7402(b) and 7604(a), I.R.C. 1954,[1] to compel compliance with an administrative summons issued to William E. Schoeberlein, the attorney-accountant for taxpayers, J. Stewart Brinsfield and his wife, demanding the production of certain financial records and work papers in Schoeberlein's possession on the date of service of the summons and alleged to be necessary to a determination of the Brinsfields' tax liabilities for the years 1965, 1966, 1967 and 1968. The government also seeks to punish Schoeberlein for contempt under § 7604(b). The Brinsfields have been allowed to intervene and participate in the hearings which have been held.

Schoeberlein and the Brinsfields have raised the following questions: (1) Whether enforcement of the summons would violate taxpayers' Fifth Amendment rights against self-incrimination? (2) Whether the summoned documents are protected from disclosure by the attorney-client privilege? (3) Whether the summons was issued for the improper purpose of obtaining evidence for a criminal prosecution? (4) Whether enforcement of the summons would violate taxpayers' Fourth Amendment rights to

1. All section references herein, unless otherwise indicated, will be to sections of the Internal Revenue Code of 1954, 26 U.S.C. The applicable statutes have been discussed in many cases cited in this opinion, and are set out in United States v. Crespo, 281 F.Supp. 928, at 930 (D.Md.1968).

be secure from unreasonable searches and seizures? (5) Whether the summoned documents are protected from disclosure as the work product of an attorney? (6) Whether the government is precluded from obtaining access to the summoned documents because of its failure to allege and prove that it did not already possess the information contained in said documents? Schoeberlein has also moved for the production of certain IRS documents, or, in the alternative, to strike the testimony of Special Agent Jerome I. Gulack and to dismiss the action.

### Findings of Fact from the Evidence

On February 5, 1968, an informant telephoned the IRS office and asked to discuss matters concerning the Brinsfields. In accordance with standard IRS procedures, the informant was directed to the Intelligence Division, and was interviewed three times by Special Agent Jerome I. Gulack. The informant submitted to Gulack some documents concerning the taxpayers. Gulack concluded that no evidence of criminal fraud had been produced; consequently, he prepared an "information item disposition" referring the matter to the Audit Division.

In November 1968 Revenue Agent Thomas Lewald was assigned the task of auditing the Brinsfields' return for the years 1965, 1966 and 1967. Lewald contacted Brinsfield, advised him of the audit, and asked to see his financial records relating to the tax years in question. Brinsfield suggested that Lewald discuss the matter with Schoeberlein, whom he characterized as his "accountant".[2] Lewald did not request that Brinsfield send the pertinent records to Schoeberlein for purposes of the audit. Lewald later discussed the audit with Schoeberlein by telephone, and a meeting was arranged. During the telephone conversation, Lewald requested that certain of the

Brinsfields' financial records for the years in question be made available to him for examination. Schoeberlein telephoned Brinsfield and arranged to have the requested documents transferred to his office for Lewald's use in conducting the civil audit.

On January 20, 1969, Lewald met with Schoeberlein in the latter's office at Ellicott City, Maryland. Before showing Lewald any of the taxpayers' records, Schoeberlein inquired whether the investigation was civil or criminal in nature and was correctly told that only civil tax liability was in question. Lewald was granted access to (1) taxpayers' cancelled checks, check stubs, bank statements and deposit slips pertaining to the years 1965, 1966 and 1967; (2) an accounting worksheet or sheets containing a "cash disbursement spread"—a listing of checks in numerical order and a separate listing of checks by various categories of expenses and deductions—prepared by Schoeberlein; (3) a "spread" of deposits prepared by Schoeberlein, which showed the dates and amounts of deposits by the Brinsfields during the three years under examination; and (4) miscellaneous accountant's workpapers. Lewald examined these records in the Bar Library at the Ellicott City Court House, across the street from Schoeberlein's office. During that examination, Lewald compiled a summary of cash disbursements by listing and adding the monthly totals for the years in question as those figures appeared on the check spread prepared by Schoeberlein. Lewald then returned the documents to Schoeberlein and gave him a list of additional information to be furnished at a later time.

Because Schoeberlein was busy during the tax season, the next meeting did not take place until June 10, 1969, when Lewald again visited Schoeberlein's office and was given the information he had requested, and was again shown the documents he had seen before. During the course of this inspection, Lewald

---

2. The face of the power of attorney which Brinsfield gave Schoeberlein referred to him as a certified public accountant. On the reverse, Schoeberlein initialed it both as attorney and C.P.A.

made a summary of the Brinsfields' deposits for the three years.

Upon completing his second examination Lewald became aware of the possibility of criminal fraud. After conferring with his supervisor, he suspended his work and referred the matter to the Intelligence Division.[3]

The Intelligence Division assigned the case to Special Agent Robert H. Caplan. On July 18, 1969, Caplan and another agent visited Schoeberlein's office and inquired whether Schoeberlein still had in his possession the records that had been seen by Revenue Agent Lewald. Schoeberlein replied that he did, but that he could not relinquish them to Caplan without first consulting his own lawyer. Caplan then served upon Schoeberlein an administrative summons demanding production of specified documents[4] in connection with an investigation to determine the tax liability of the taxpayers for the years 1965, 1966, 1967 and 1968. Caplan instructed Schoeberlein not to dispossess himself of any of the summoned documents prior to the return date, August 4, 1969. On that date, Schoeberlein appeared at Caplan's office and surrendered certain corporate tax records in his possession, but stated that, on the advice of his counsel, he refused to produce the Brinsfields' personal records, including cancelled checks, check stubs and deposit slips, as well as some accountant's workpapers prepared by Schoeberlein on the ground that such production would violate the Brinsfields' privilege against self-incrimination under the Fifth Amendment. In fact, Schoeberlein had returned all of these documents to the Brinsfields between the service date and the return date of the summons.[5]

The records in controversy have been placed in the custody of the Court by stipulation of the parties pending determination of the enforceability of the summons.[6]

Schoeberlein had used the bank statements and the check stubs for the years 1965, 1966 and 1967 in the preparation of the taxpayers' returns for those years and had returned the statements and the

---

3. IRS procedures governing the transfer of cases from the Audit Division to the Intelligence Division are set out in length in United States v. Crespo, 281 Supp. at 931–932.

4. The documents requested were:
 "All records belonging to either [J. Stewart or Evelyn Brinsfield], or belonging to you, which were either used in the preparation of the above named subjects' income tax returns [for 1965, 1966, 1967, or 1968] or for some other reason, including, but not limited to the following: 1. Workpapers; 2. Cancelled Checks; 3. Bank Statements; 4. Deposit Slips; 5. Cash Receipts Books; 6. Cash Disbursement Books; 7. General Ledgers; 8. Journals.
 "The same information is requested for the following [corporations in which the Brinsfields have an interest]: Stewart-Nichols Corp.; Fidelity Title Holding Corp.; Ridgeway Realty Co., Inc.; William Foell Apartments, Inc.; Christian Broadcasting Co.; Christian Broadcasting Committee, Inc.; Trinity Evangelical Church."

5. The parties now agree that Schoeberlein did not act on advice of counsel in delivering to the Brinsfields the papers covered by the summons which had been served on him.

6. The records in the custody of the Court, which are in dispute in this action, may be described as follows:
 "1. One loose leaf notebook containing workpapers prepared by Schoeberlein.
 "2. Monthly bank statements for the years 1965, 1966 and 1967 of the checking account of J. Stewart Brinsfield, J. Stewart Brinsfield, Jr., and Mrs. Evelyn W. Brinsfield, at the First National Bank of Maryland, Catonsville Branch, Account No. 51914-7601. (The statement for August 1966 is missing).
 "3. Check stubs for the years 1965, 1966, and 1967, with some checks attached to the stubs by staple or paper clip. * * *
 "4. A group of checks marked 'Special Checks—Keep together—Personal' for the years 1965, 1966 and 1967.
 "5. Check stubs for the year 1968.
 "6. Deposit slip receipts for account number 519147601 for the years 1965, 1966 and 1967."

stubs to them before the commencement of the audit by Revenue Agent Lewald. Until that audit began he had never had possession of the deposit slips. The check stubs for 1968 were in his possession at the time of the service of the summons because he had used them in preparing the taxpayers' return for 1968.[7] Special Agent Caplan never saw any of the records in controversy.

Shortly after the return of the summons, Special Agent Caplan left the employ of the Service, and the case was reassigned to Special Agent Gulack, who is a petitioner herein.[8]

### The Motion for Production of IRS Documents

 Both during and after the hearings, Schoeberlein moved for pro-duction of certain IRS documents listed in the margin;[9] or, in the alternative, if production of the materials requested by items (a), (b) and (f) be not forthcoming, that the testimony of Special Agent Gulack be stricken from the record and this proceeding be dismissed. The government objected, and the Court denied production of items (a), (c) and (f), but has made an in camera inspection of items (b), (d) and (e). After inspecting items (b), (d) and (e), the Court is satisfied that respondents are not entitled to examine those documents at this time, but the Court has considered their contents in ruling on the points raised by respondents.[10] The Court's denial of Schoeberlein's motion is without prejudice to any right the Brinsfields may have to seek discovery of or

7. The materials pertaining to tax years 1965, 1966 and 1967 were made available to Revenue Agent Lewald for the civil audit, but Lewald had neither requested nor been granted access to the 1968 check stubs.

8. On June 1, 1970, after commencement of this action, Special Agent Gulack served upon J. Stewart Brinsfield an administrative summons demanding production of specified documents, including all documents designated in the previous summons issued to Schoeberlein. On June 12, 1970, Brinsfield appeared and testified in response to the summons, but declined to testify as to matters relating to his personal tax liability by reason of his Fifth Amendment privilege against self-incrimination. At the same time he produced the summoned documents but declined, again on Fifth Amendment grounds, to permit their inspection by Special Agent Gulack. No proceeding has been brought to compel compliance with the summons issued to Brinsfield. As an intervenor in the present action, Brinsfield has reasserted his Fifth Amendment privilege as to all documents which he owns and has placed them in the custody of the Court by stipulation.

9. "a. All statements or reports in the possession of the United States which were made by any Government witness (including Thomas W. Lewald, Robert H. Caplan, and Jerome I. Gulack) who has testified on direct examination in the trial of the above-captioned case. Such statements shall be deemed to include all written statements and recordings of any oral statements of any witness.

"b. The two reports prepared by Special Agent Gulack in 1968 in connection with his contacts with an alleged informer, as mentioned in his testimony.

"c. The work papers prepared by Revenue Agent Lewald in connection with his inspections of the taxpayers in January and June of 1969, as mentioned in his testimony (Tr. 23, 25).

"d. The fraud referral form prepared by Revenue Agent Lewald and submitted in June of 1969, as mentioned in his testimony (Tr. 40–41).

"e. Memoranda prepared by Special Agent Caplan in July and August of 1969 in connection with his interviews of the Respondent, as mentioned in his testimony.

"f. Memoranda prepared by Special Agent Gulack in June of 1970 in connection with his interviews of the taxpayers, as mentioned in his testimony."

10. Items (d) and (e) have been sealed and will be included in the record on any appeal. The Court agrees with the government that there are sufficient reasons why the IRS should keep in its own custody item (b), which discloses the name of the informer and what he told Gulack. The contents of item (b) are not inconsistent with the findings in the first paragraph of the Findings of Fact in the opinion. The Court has not attempted to determine whether Gulack properly concluded that no evidence of criminal fraud had been produced. That is not a function of the Court in this proceeding.

use such documents in any criminal proceeding which may be brought against them or either of them. Respondent's alternative motions to strike the testimony of Special Agent Gulack and to dismiss the action will also be denied.

Those rulings are supported by Donaldson v. United States, 400 U.S. 517, at 528, 529, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971). See also Venn v. United States, 400 F.2d 207, 212, n. 12 (1968); United States v. Roundtree, 420 F.2d 845, 851–852 (5 Cir. 1969); United States v. Howard, 360 F.2d 373, 381 (3 Cir. 1966); United States v. Moriarty, 278 F.Supp. 187 (E.D.Wis.1967); Dunn v. Ross, 356 F.2d 664, 667–668 (5 Cir. 1966); McGarry's Inc. v. Rose, 344 F.2d 416, 418 (1 Cir. 1965); United States v. Ruggeiro, 300 F.Supp. 968, 972 (C.D.Cal.1969), aff'd per curiam, 425 F.2d 1069, 1071 (9 Cir. 1970).

### Self-Incrimination

■ The Fifth Amendment provides, in pertinent part, that no person "shall be compelled in any criminal case to be a witness against himself". Generally, however, since the Fifth Amendment is concerned with compulsion of the citizen to testify against himself, a witness may not assert another's constitutional right against self-incrimination to excuse his own non-production of summoned documents. See United States v. White, 322 U.S. 694, 704, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); Hale v. Henkel, 201 U.S. 43, 69–70, 26 S.Ct. 370, 50 L.Ed. 652 (1906); United States v. Merrell, 303 F.Supp. 490 (N.D.N.Y. 1969). Similarly, a person whose personal records are in the possession of another may not ordinarily, by invoking the Fifth Amendment, bar production by the other of the incriminating evidence. Johnson v. United States, 228 U.S. 457, 458–459, 33 S.Ct. 572, 57 L.Ed. 919 (1913); United States v. Couch, 449 F. 2d 141 (4 Cir. 1971); United States v. Merrell, supra; United States v. Pizzo, 260 F.Supp. 216, 221 (S.D.N.Y.1969); Dorfman v. Rombs, 218 F.Supp. 905 (N. D.Ill.1963). In *Couch*, the Fourth Circuit said:

"The answer to this [Fifth Amendment] contention lies in the fact that the records were not in the [taxpayer's] possession but were in the custody of her accountant. She had voluntarily relinquished her control of the records. They had passed from the sphere of privilege surrounding her, for there was no accountant-client privilege." 449 F.2d at 143.

■ The fact that Schoeberlein is an attorney as well as the accountant who prepared the returns is not controlling.[11] The language of the Fourth Circuit in *Couch* indicates that records in the hands of a taxpayer's attorney are protected from disclosure in an appropriate case by the attorney-client privilege (discussed below), and not by the taxpayer's Fifth Amendment privilege.

An exception to the general principle that a person may not object on Fifth Amendment grounds to the production of his personal records in the possession of another was recognized in Stuart v. United States, 416 F.2d 459 (5 Cir. 1969). In *Stuart*, the suspect had delivered her records to the accountant for the sole purpose of providing a more convenient time and location for conducting the pending investigation. Most of the records in the instant case, on the other hand, were transferred to Schoeberlein because of Brinsfield's desire that Lewald direct

---

11. Some courts have recognized an exception to the general rule in certain cases in which the taxpayer records or his accountant's workpapers were in the possession of the taxpayer's attorney. See United States v. Judson, 322 F.2d 460, 466–468 (9 Cir. 1963); Colton v. United States, 306 F.2d 633, 639 (2 Cir. 1962) (dictum); United States v. Pritchard, 70–1 U.S.T.C. ¶ 9434 (N.D.Ala.1970), aff'd on other grounds, 438 F.2d 969 (5 Cir. 1971); United States v. Higgins, 266 F.Supp. 593, 595 (S.D.W.Va.1966) (Field, C. J.); Application of House, 144 F.Supp. 95, 101–102 (N.D.Cal.1956). But see Johnson v. United States, 228 U.S. 457, 33 S.Ct. 572, 57 L.Ed. 919 (1913), and United States v. Couch, 449 F.2d 141 (4 Cir. 1971), quoted in the text, and other cases cited in the text.

his inquiries to Schoeberlein rather than to him. Thus the unfairness that would have accompanied enforcement of the summons in *Stuart* is lacking in the case at bar. See United States v. Couch, supra.

Schoeberlein and the Brinsfields also argue "[t]hat the summoned documents are not presently within the ownership, custody, or control of Schoeberlein and cannot be reacquired by him because the owner and possessor thereof (Brinsfield) has asserted his Fifth Amendment privilege as to such documents; that enforcement of the summons issued to Schoeberlein must be denied because he cannot produce what he does not own or possess; that enforcement would compel Brinsfield to incriminate himself by compelling him to produce his personal documents for inspection by the Internal Revenue Service."

This argument ignores the fact that Schoeberlein delivered the papers in question to Brinsfield after Schoeberlein had been served with the administrative summons which the government seeks to enforce in this case.

No case precisely in point has been cited or found. There have been analogous cases, notably United States et al. v. Lyons et al., 442 F.2d 1144 (1 Cir. 1971), where Judge Coffin, speaking for the Court said:

"Though we declare the appeal moot, we feel impelled to say more in the exercise of our supervisory power over those officers of the court who are members of the bar. We view with concern the tactics resorted to in this case, i. e., the physical removal by taxpayer's attorney of documents from the possession of Lyons, under threat of suit by taxpayer, after Lyons had been served with a summons. To the extent that taxpayer's assertion of his privilege against self incrimination might be based on title, such a trans-

fer of possession would in no way improve his position. While possession, if 'rightful', might give taxpayer a basis for asserting his privilege, *see* United States v. Cohen, 250 F.Supp. 472, 475 (D.Nev.1965), aff'd, 388 F.2d 464 (9th Cir. 1967), and mere custody by Lyons might not defeat taxpayer's defense against the summons, *see* Schwimmer v. United States, 232 F.2d 855, 860–861 (8th Cir.), cert. denied, 352 U.S. 833, 77 S.Ct. 48, 1 L. Ed.2d 52 (1956), there exists an orderly way to assert constitutional or other claims before a hearing officer under § 7602 and before the district court. Reisman v. Caplin, 375 U.S. 440, 449–450, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964).

"We accept the teaching of United States v. Zakutansky, 401 F.2d 68, 72 (7th Cir. 1968), cert. denied, 393 U.S. 1021, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969), that a post-subpoena transfer cannot 'change the character of the papers and thereby defeat a legitimate government investigation.' Under these circumstances there is no justification, however conscientiously motivated, for this kind of self help. *Cf.* McGarry v. Riley, 363 F.2d 421 (1st Cir. 1966); In re D. I. Operating Company, 240 F.Supp. 672, 677 (D.Nev. 1965). Even, however, if taking the papers from the party served with a quasi judicial summons could destroy the summons' effect, we would think this highly questionable conduct for a member of the bar. At the least it would expose the party summonsed to a charge of contempt." 442 F.2d at 1146.

■■■■ After an attorney or an accountant has received an administrative summons from the IRS to produce certain papers, it is his duty not to turn those papers over to his client or to anyone else except the IRS [12] until the Court

---

12. Except, also, he may turn them over to his own counsel, for the purpose of preparing suit papers or preparing to defend against the enforcement of the summons. Possession by counsel for the summoned party under those circumstances would be considered possession of the summoned party.

has ruled on any objection he or his client may have to turning them over.

In *Lyons*, the First Circuit also said:

" * * * If and when a future criminal proceeding is initiated against taxpayer, 'to the extent that he has * * * a protectable interest, as, for example, by way of privilege, or to the extent he may claim abuse of process, [he] may always assert that interest or that claim in due course at its proper place in any subsequent trial.' Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). *See*, Duke, Prosecutions for Attempts to Evade Income Tax, 76 Yale L.J. 1, 62 (1966). The mere possibility of future criminal proceedings does not in itself justify present appellate consideration of the propriety of the summons. At this purely investigatory stage, which may lead to civil proceedings or no proceedings at all, to quash the summons would be to prescribe amputation to forestall possible infections." 442 F.2d at 1145.

The Court will treat this case as though the documents were still in the possession of Schoeberlein. The Fifth Amendment does not prevent production of the summoned documents.

### Attorney-Client Privilege

■ The fact that Schoeberlein is an accountant as well as a lawyer does not, of course, foreclose him from invoking the attorney-client privilege on appropriate occasions. See United States v. Threlkeld, 241 F.Supp. 324 (W.D.Tenn. 1965). Like any other attorney, however, Schoeberlein can refuse to disclose client communications only in accordance with the well-established rule, formulated by Professor Wigmore as follows:

"(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived."

8 Wigmore on Evidence, § 2292 (1961), quoted with approval in United States v. Kovel, 296 F.2d 918, 921 (2 Cir. 1961).

■ All of the items (except the 1968 check stubs) which the government now seeks had been previously shown to Revenue Agent Lewald by Schoeberlein at the instance of his client, Brinsfield, and had therefore lost any privilege they may otherwise have had. See United States v. Threlkeld, supra, 241 F.Supp. 326; In re Fisher, 51 F.2d 424 (S.D.N.Y.1931). Moreover, the several items sought by the government are excluded from the protection of the claimed privilege for other reasons. The check stubs for 1965, 1966 and 1967 had been turned over by taxpayers to Schoeberlein for use in preparing the income tax returns for those years; the information contained thereon, insofar as it was relevant to taxpayers' income tax liability, was intended to be disclosed on the tax returns and to revenue agents who might audit the returns, and is, therefore, discoverable.[13]

■ Schoeberlein's work papers, developed for and used in connection with the preparation of the income tax returns, are not privileged, because (1)

---

13. Even where, as in Maryland, see Anno. Code of Maryland, Art. 75A, § 21 (1970 Supp.), communications between accountants and their clients are expressly protected by statute, the courts have almost uniformly held the privilege to be inapplicable in federal tax litigation. Colton v. United States, 306 F.2d 633, 636 (2 Cir. 1962), cert denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); Falsone v. United States, 205 F.2d 734, 742 (5 Cir.), cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953); United States v. Threlkeld, 241 F.Supp. 324, 326 (W.D.Tenn.1965); Dorfman v. Rombs, 218 F.Supp. 905 (N.D.Ill.1963). Contra: Baird v. Koerner, 279 F.2d 623 (9 Cir. 1960).

they were not prepared by the client and (2) were the basis for the information submitted to the government on the tax returns and/or on an F.C.C. application which taxpayers had filed. They are not privileged. See United States v. Merrell, 303 F.Supp. 490 (N.D.N.Y.1969); United States v. Threlkeld, 241 F.Supp. 324 (W.D.Tenn.1965); United States v. Schlegel, 313 F.Supp. 177 (D.Neb.1970); Bouschor v. United States, 316 F.2d 451 (8 Cir. 1963); Colton v. United States, 306 F.2d 633 (2 Cir. 1962); Bauer v. Orser, 258 F.Supp. 338 (D.N.D.1966). Similarly, the bank statements were prepared by the bank and not by the client; they did not acquire a privilege by being sent by the client to his lawyer-accountant. The cancelled checks and deposit slips were prepared with the intention that they should come to the attention of the bank and/or others, and do not qualify for the privilege. O'Donnell v. Sullivan, 364 F.2d 43 (1 Cir.), cert. denied, 385 U.S. 969, 87 S.Ct. 501, 17 L. Ed.2d 433 (1966); United States v. Judson, 322 F.2d 460, 463 (9 Cir. 1963). The check stubs for 1968 were not shown to Lewald, but they were sent by Brinsfield to Schoeberlein to be used in the preparation of the 1968 tax return which was to be submitted to the government. Therefore, unless respondents can show that they were not used for that purpose, they fall within the rule of *Merrell, Threlkeld* and *Schlegel,* supra.

If respondents wish a supplementary hearing on this narrow question, one will be arranged promptly, otherwise the 1968 check stubs will be included in the order to be entered pursuant to this opinion.

### Propriety of the Summons

■ The taxpayers contend that the instant summons was issued for the improper purpose of obtaining evidence for use in a criminal prosecution.

The argument that a summons may not issue in aid of a criminal prosecution is based upon the following dictum in Reisman v. Caplin, 375 U.S. 440, 449, 84 S.Ct. 508, 513, 11 L.Ed.2d 459 (1963):

"[T]he witness may challenge the summons on any appropriate ground. * * * [including] that the material is sought for the improper purpose of obtaining evidence for use in a criminal prosecution. Boren v. Tucker, 239 F.2d 767, 772–773."

However, in the recent decision in Donaldson v. United States, 400 U.S. 517, 532 et seq., 91 S.Ct. 534, 27 L.Ed.2d 580 (1971), the Court set at rest any questions concerning the propriety of summonses issued in cases in which, as here, both civil and criminal income tax liability are being investigated contemporaneously. The Court concluded:

"We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution." 400 U. S. at 536, 91 S.Ct. at 545.

In the case at bar no recommendation of criminal prosecution of the Brinsfields has been made. It also appears from the evidence that the summons in question was issued in good faith. The summons was not issued for an improper purpose.

### Unreasonable Search and Seizure

■ What was said in United States v. Crespo, 281 F.Supp. 928, at 935 (D. Md.1968), applies here:

"[R]espondents have not shown that enforcement of the summons * * * would be unreasonable. Respondents do not even contend that the summons is overly broad, sweeping, or indefinite, or that there is no basis for the probable existence of the records. * *

"In the absence of such a showing, the summons *per se* does not violate the Fourth Amendment. (Citations omitted)."

The only claim of "unreasonableness" advanced by taxpayers is that the initial examination by Agent Lewald constituted an unconstitutional search or seizure, the consent to which was gained by the deceit of the investigator. They argue (1) that an examination of tax-

payers' records without the consent of the taxpayers is an unreasonable seizure of the information contained therein, and (2) that the taxpayers' consent in the case at bar is ineffective to excuse an otherwise unconstitutional search, because it was obtained by deceitfully leading taxpayers to believe that the only consequence of the examination would be the possible imposition of civil tax liability, when in actuality criminal sanctions may be imposed. The evidence does not support the claimed deceit. Moreover, Schoeberlein knew that information uncovered by Lewald *could* lead to criminal prosecution; that fact would be within the knowledge of the ordinary tax practitioner. See United States v. Sclafani, 265 F.2d 408, 415 (2 Cir. 1959), where the Court said: "Surely defendant was aware that, if a 'routine audit' revealed evidence of criminal liability, the agent would not ignore it merely because he was primarily concerned with civil liability". Lord v. Kelley, 223 F. Supp. 684 (D.Mass.1963), app. dismissed, 334 F.2d 742 (1 Cir. 1964), relied on by respondents, dealt with a physical taking of records, not with a summons. The Fourth Amendment does not render the instant summons unenforceable.

### The Work Product Rule

The "work-product doctrine" applies when a litigant seeks to compel production by adverse counsel of "attorney work papers" prepared for trial. None of the Schoeberlein papers fall into that category. As was noted by the court in Colton v. United States, 306 F. 2d 633, 640 (2 Cir. 1962), when confronted with a similar argument:

"[Respondent] has made no suggestion that any of the papers involved were collected or prepared in contemplation of litigation, as must be shown to justify the invocation of this rule."

### Records Already in Possession of Government

Respondents claim, on the basis of United States v. Pritchard, 438 F. 2d 969 (5 Cir. 1971), that the prior examination of their records by Agent Lewald precludes further government access to the documents. In *Pritchard*, the Fifth Circuit said:

"While it is clear that the burden is on the taxpayer to prove that the summons is being utilized for harassment or is an abuse of the court's process [Citations], the Supreme Court has held that the Commissioner 'must show that * * * *the information sought is not already within the Commissioner's possession* * * *' United States v. Powell, supra, 379 U.S. at 57–58, [85 S.Ct. 248] * * * Neither the Government's petition nor the agent's affidavit made reference to whether the information sought was in the Commissioner's possession.

"* * * *

"It is clear that the information sought was already in the Commissioner's possession." (Emphasis in text quoted) 438 F.2d at 971.

In our case respondents do not claim that the government's request for a second look at their records constitutes an "unnecessary" additional examination under the controlling statute, I.R.C. § 7605(b). Rather, they argue that the government is not entitled to the documents in question because it did not allege and prove that the records were not already within its possession.

This Court finds that the information sought is not already within the Commissioner's possession. The Court further finds that the information sought is essential to the determination of the tax liabilities of the taxpayers. Having had access to the material at some time in the past is not the equivalent of having possession of all information therein, when the development of the case indicates a need for a review of the material.

### Contempt

Although Schoeberlein's action in turning the papers over to his client was contrary to what the Court holds to

have been his duty[14] under the circumstances, and would ordinarily amount to a contempt, the Court is aware that divergent views have been expressed in the literature, and is advised that this is the first case in which the IRS has sought a citation for contempt under these circumstances. There is no suggestion that there has been any tampering with the documents involved in this case, and they are now in the custody of the Court. The Court will not issue a citation for contempt in this instance.[15]

The summons will be enforced. Counsel should agree upon an appropriate order.

---

14. See discussion under the heading "Self Incrimination", above, as well as "Findings of Fact".

15. Citations for contempt may be appropriate in future cases.