**UNITED STATES of America and Richard Thalman, Special Agent, Internal Revenue Service, Petitioners,**

v.

**Harold H. TSUKUNO, Respondent,**
**and**
**Ken Eto, Intervenor.**

**No. 72 C 418.**

United States District Court,
N. D. Illinois, E. D.

April 21, 1972.

**840**

Shelley Waxman, Asst. U. S. Atty., Chicago, Ill., for petitioners.

Anna R. Lavin, Chicago, Ill., for respondent.

Edward J. Calihan, Jr., Chicago, Ill., for intervenor.

## OPINION AND ORDER

McLAREN, District Judge.

This action was initiated by the United States by a petition requesting an order to respondent Tsukuno directing him to show cause why he should not comply with an Internal Revenue Service (hereinafter "IRS") summons issued by petitioner Thalman, a Special Agent of IRS, pursuant to 26 U.S.C. §§ 7402(b) and 7604(a). The order was entered February 22, 1972 with directions to the parties to brief the legal issues.

The summons directed Tsukuno, an accountant, to produce certain records and documents in his possession in connection with an investigation of the tax liabilities of intervenor Ken Eto. The items described in the summons may be generally divided into two categories: (1) workpapers developed and used by Tsukuno in the preparation of Eto's tax returns, and (2) the personal books and records of Eto used by, and still in the possession of, Tsukuno.

Tsukuno and Eto urge two reasons why this Court should not order Tsukuno to comply with the summons—the Illinois statutory accountant-client privilege and the Fifth Amendment privilege against self-incrimination.

### The Accountant-Client Privilege

 Ill.Rev.Stat. ch. 110½, § 51, provides that:

> "A public accountant shall not be required by any court to divulge information or evidence which has been obtained by him in his confidential capacity as a public accountant."

In United States v. Balistrieri, 403 F.2d 472, 481 (7th Cir.), vacated on other grounds, 395 U.S. 710, 89 S.Ct. 2032, 23 L.Ed.2d 654 (1969), the Court of Appeals for the Seventh Circuit held that in a federal criminal tax prosecution federal law applies, and because there is no accountant-client privilege in the federal system, the Illinois statute is inapplicable. Although the present case merely involves the enforcement of a

summons, *Balistrieri* appears to state the applicable rule. Although state laws creating privileges are substantive and have been followed in diversity cases, Palmer v. Fisher, 228 F.2d 603, 608 (7th Cir. 1955), it is well-settled that questions of privilege in a federal income tax investigation are controlled by federal law. Colton v. United States, 306 F.2d 633, 636 (2d Cir. 1962), cert. denied, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); Falsone v. United States, 205 F.2d 734, 742 (5th Cir.), cert. denied, 346 U.S. 864, 74 S.Ct. 703, 98 L.Ed. 375 (1953); United States v. Schoeberlein, 335 F.Supp. 1048, 1057 n. 13 (D.Md. 1971); Dorfman v. Rombs, 218 F.Supp. 905, 907 (N.D.Ill.1963). Compliance with the Revenue Service summons cannot therefore be withheld on the basis of the Illinois accountant-client privilege.

### The Fifth Amendment Privilege Against Self-Incrimination

█ Although it did not involve the same issue and facts as the instant case, Donaldson v. United States, 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) is illuminating. In that case, an IRS agent issued summonses to the taxpayer's former employer and its accountant for the production of their records of his compensation. The intervening taxpayer's argument that an IRS summons proceeding may not be utilized in aid of an investigation that has the potentiality of resulting in a recommendation of criminal prosecution was rejected, the Court stating:

> "To draw a line where a special agent appears would require the Service, in a situation of suspected but undetermined fraud, to forgo either the use of the summons or the potentiality of an ultimate recommendation for prosecution. We refuse to draw that line and thus to stultify enforcement of federal law. [citation omitted]

> "We hold that under § 7602 an internal revenue summons may be issued in aid of an investigation if it is issued in good faith and prior to a recommendation for criminal prosecution."

400 U.S. at 535–36, 91 S.Ct. at 545. The Court emphasized in *Donaldson* that there was no constitutional issue presented by the facts and that each summons was—

> ". . . we repeat, . . . directed to a third person with respect to whom no established legal privilege . . . exists, and had to do with *records in which the taxpayer has no proprietary interest of any kind, which are owned by the third person, which are in his hands, and which relate to the third person's business transactions with the taxpayer.*"

400 U.S. 523, 91 S.Ct. 534, 538 [emphasis added]. The Court endorsed the Court of Appeals' statement in *Donaldson*:

> ". . . nor is it a case in which the subpoena seeks to obtain records *of the taxpayer* in the hands of his attorney or accountant, which the courts have deemed the same as if they were in the possession of the taxpayer himself. See Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459, and this court's recent decision in Stuart v. United States, et al., 5 Cir., 416 F. 2d 459; . . . ."

418 F.2d 1213, 1214 (5th Cir. 1969) [emphasis in original]. The clear implication of the statements above which distinguish *Donaldson* from cases such as the instant one where the records sought belong to the taxpayer, or in which he had some "proprietary interest," is that the taxpayer may assert his Fifth Amendment privilege to prevent their production by his lawyer or accountant.

█ Petitioners argue that the privilege was lost when the accountant received the intervenor's records, relying in part on Johnson v. United States, 228 U.S. 457, 458, 33 S.Ct. 572, 57 L.Ed. 919 (1913). It is inapposite, however, because there the defendant's books had passed by operation of law to his trustee in bankruptcy and he therefore no long-

er had any proprietary interest in them. The government's reliance on Bouschor v. United States, 316 F.2d 451, 458–59 (8th Cir. 1963) is also misplaced. At best, that case says that the respondent accountant could not assert the taxpayer's constitutional right against production; here, the intervening taxpayer himself has personally asserted that right.

The petitioner relies chiefly on United States v. Couch, 449 F.2d 141 (4th Cir. 1971), cert. granted, 405 U.S. 1038, 92 S. Ct. 1311, 31 L.Ed.2d 579 (April 3, 1972) and United States v. Schoeberlein, 335 F.Supp. 1048 (D.Md.1971). Couch held that requiring an accountant to produce taxpayer's records did not violate the taxpayer's privilege against self-incrimination because she had voluntarily relinquished control of the records. 449 F.2d at 143. Relying on Couch, the Schoeberlein court held that:

". . . a person whose personal records are in the possession of another may not ordinarily, by invoking the Fifth Amendment, bar production by the other of the incriminating evidence."

335 F.Supp. at 1055.

Another line of cases reaches a contrary conclusion. For example, in Stuart v. United States, 416 F.2d 459, 463 (5th Cir. 1969), it was held that the government could not force the production of records which the taxpayer had placed in his accountant's possession solely for the convenience of a revenue agent. The basic reasoning underlying Stuart and a number of other cases dealing with similar facts (United States v. Merrell, 303 F.Supp. 490, 493 (N.D.N.Y. 1969); United States v. Pizzo, 260 F. Supp. 216, 221 (S.D.N.Y.1966); Dorfman v. Rombs, 218 F.Supp. 905, 906 (N.D.Ill.1963)), as well as the language quoted from the Fifth Circuit and Supreme Court opinions in Donaldson, appears to be simply this: inasmuch as a taxpayer's privilege against self-incrimination extends to refusing to produce records in his own possession, it makes little sense to say that he has waived it by placing the records in the possession of an agent.

■ It seems clear that when intervenor-taxpayer Eto delivered his personal books and records into the possession of his accountant in connection with services to be performed for him by the accountant, he did not lose his ownership or proprietary interest in them. It also seems clear that a person's Fifth Amendment rights are not so lacking in substance that they disappear if a government agency can locate and subject to process records temporarily out of his immediate possession. This Court therefore refuses to enforce the summons directed to the respondent-accountant Tsukuno as to Eto's personal records and, pursuant to Eto's request, directs that they be returned to him.

■ As to the accountant's working papers, which the summons also seeks to reach, the issue to be decided is whether they were the property of the accountant or of the taxpayer at the time of the service of summons. Absent a contrary showing, it is presumed that they are the property of the accountant and thus must be produced in compliance with the summons. United States v. Zakutansky, 401 F.2d 68, 70–73 (7th Cir. 1968), cert. denied, 393 U.S. 1021, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969). Here, unless some strong rebutting evidence is shown, such as a prior agreement that the workpapers were to belong to the taxpayer (United States v. Re, 313 F.Supp. 442, 447 (S.D.N.Y.1970); Application of House, 144 F.Supp. 95, 102 (N.D.Cal. 1956)), this Court will conclude that the accountant's previously uninterrupted possession of the working papers shows his ownership of them. United States v. Zakutansky, 401 F.2d at 72. The taxpayer will have ten days within which to present any such rebutting evidence, failing which, the respondent will turn the above-described workpapers over to IRS pursuant to the summons.