401 F.2d 68
 UNITED STATES of America and Richard C. Andersen, Special Agent, Internal Revenue Service, Petitioners-Appellees,
v.
Michael ZAKUTANSKY and Arthur M. Johnston also known as Arthur M. Johnson, Respondents-Appellants.
 No. 16790.
 United States Court of Appeals Seventh Circuit.
 August 22, 1968.
 Rehearing Denied September 17, 1968.
 Certiorari Denied January 13, 1969.
 
 See 89 S.Ct. 628.
 Bernard H. Sokol, Chicago, Ill., for respondents-appellants; Sokol, Schwab & Agran, Chicago, Ill., of counsel.
 Mitchell Rogovin, Asst. Atty. Gen., Tax Division, Joseph M. Howard, John M. Brant, Atty's., Dept. of Justice, Washington, D. C., Alfred W. Moellering, U. S. Atty., Fort Wayne, Ind. (Lee A. Jackson, Atty., Dept. of Justice, Alfred R. Uzis, Asst. U. S. Atty., on the brief), for petitioners-appellees.
 Before SCHNACKENBERG, KILEY and FAIRCHILD, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 Michael Zakutansky, a certified public accountant, and Arthur M. Johnston, also known as Arthur M. Johnson, "taxpayer", appeal from the district court's order directing Zakutansky to appear before a special agent of the Internal Revenue Service and deliver papers and give testimony relating to the tax liability of taxpayer and his wife.
 
 The court's order provided that:
 
 2
 "The petitioners having filed their petition to show cause against the respondents, and a rule having issued and a hearing thereon having been held and the Court having heard and examined the evidence, argument of counsel and briefs filed by the parties, and having filed its findings of fact and conclusions of law,
 
 
 3
 It Is Now Ordered And Decreed that the respondent Michael Zakutansky appear before a special agent of the Internal Revenue Service at such time and place as such agent may specify and deliver the papers that have been marked 1 through 79 to said special agent and give evidence pertaining to the tax liability of Arthur and Sue Johnston for the years 1960 through 1965."
 
 
 4
 In support of its order the court issued the following memorandum:
 
 
 5
 "This action was commenced by the filing of a petition to enforce an Internal Revenue summons against the two named defendants [respondents here]. Jurisdiction of the court is based on Title 26, U.S.C. Sections 7602 and 7604(a)[1] and is unchallenged by the parties to the proceedings. The summons sought to be enforced against the defendants, seeks the production of accountant's work papers used by defendant Zakutansky in preparing the income tax returns of Mr. Johnston for the years 1960 through 1965.[2] At the time the action was commenced, respondent Johnston, the taxpayer, had possession of the papers in question. His attorney produced these papers in a sealed envelope for the Court's examination in camera. It is the taxpayer's contention that the papers in question are protected by the Fifth Amendment guarantee against self-incrimination. The government contends that the papers are the property of the accountant Zakutansky and are therefore not protected by privilege.
 
 
 6
 Briefly the facts are as follows: The respondent Zakutansky is a certified public accountant who prepared the respondent Johnston's tax returns for the years 1960 through 1965. On May 11, 1966 special agents of the Internal Revenue Service visited the offices of Mr. Zakutansky to inquire about Mr. Johnston's tax returns. Mr. Zakutansky told the agents that he had work papers belonging to him which he had used in preparing Mr. Johnston's returns. On May 23, 1966 Mr. Zakutansky appeared in response to a subpoena requiring testimony and the papers. Mr. Zakutansky's attorney requested time in which to determine his client's responsibilities and Mr. Zakutansky refused to surrender the papers. On June 28, 1966 a second subpoena was issued requiring Mr. Zakutansky to appear and produce the papers on July 8, 1966. Mr. Zakutansky appeared in the company of an attorney, but refused to testify or produce the papers because the subpoena was erroneously dated July 28, 1966 instead of June 28, 1966. On July 21, or 22 of 1966, Mr. Zakutansky turned the papers over to the taxpayer Mr. Johnston. Subsequently, summonses were served on Mr. Zakutansky and Mr. Johnston for the production of the papers. Mr. Zakutansky was unable to comply because he no longer had the papers and Mr. Johnston refused to comply under a claim of the Fifth Amendment privilege. Mr. Johnston did produce, however, pencil copies of the tax returns compiled by Mr. Zakutansky.
 
 
 7
 This Court has examined the numerous authorities cited by the parties and finds none of them to be controlling on the exact question before us. There are certain general principles, however, which most, if not all, authorities agree upon. First, as a general rule accountant's work papers are the property of the accountant unless shown to the contrary. Falsone v. United States, 205 F.2d 734 (5th Cir. 1953); Sale v. United States, 228 F.2d 682 (8th Cir. 1956) cert. den. 350 U.S. 1006, 76 S.Ct. 650, 100 L.Ed. 868 (1956); United States v. Boccuto, 175 F.Supp. 886 (D.N.J.1959) App. dism. 274 F.2d 860 (3rd Cir. 1960) Anno. 90 A.L.R.2nd 784 (1963). Secondly, if the papers had remained in the possession of the accountant, he would have been required to produce them. Falsone v. United States, supra; Sale v. United States, 228 F.2d 682, supra. Third, if the taxpayer held the papers as his undisputed personal property, or if they were in his rightful and indefinite possession, they would have been protected by his privilege against self-incrimination. United States v. Cohen, 250 F.Supp. 472 (D.Nev.1965); See United States v. Judson, 322 F.2d 460 (9th Cir. 1963); Colton v. United States, 306 F.2d 633 (2d Cir. 1962) cert. den. 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed. 2d 499 (1963); Application of House, 144 F.Supp. 95 (N.D.Cal.1956). Other questions remain unsettled by the varying decisions of the federal courts. Some courts have held that the taxpayer's attorney in possession of accountant's work papers has no right to assert his client's privilege against self-incrimination. Bouschor v. United States, 316 F.2d 451 (8th Cir. 1963); In re Fahey, 300 F.2d 383 (6th Cir. 1961); United States v. Boccuto, 175 F.Supp. 886 (D. N.J.1959). App. dism. 274 F.2d 860 (3rd Cir. 1960). Contra. United States v. Judson, 322 F.2d 460 (9th Cir. 1963); Colton v. United States, 306 F.2d 633 (2d Cir. 1962), cert. den. 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); Application of House, 144 F.Supp. 95 (N. D.Cal.1956).
 
 
 8
 Based on the above cases, the court determined that respondent Johnston would be entitled to withhold the papers under a claim of privilege if he owned them or rightfully held them in his personal capacity for an indefinite period. The court further determined that if the papers were accountant's work papers, they originally belonged to the accountant. The taxpayer contended that these were not accountant's work papers, because there was no certified public audit which required the accountant to keep work papers. Mr. Zakutansky's work was confined to the preparation of the taxpayer's returns and the papers in question consisted of his notes and adding machine tapes used in the preparation of the returns. Mr. Zakutansky testified that he personally did not consider these to be work papers, but he had previously told the special agents that they were.
 
 
 9
 The court determined that they were work papers. In United States v. Pizzo, 260 F.Supp. 216 (S.D.N.Y.1966), where the accountant's work was confined to the preparation of the taxpayer's returns, the court found, on the basis of the accountant's testimony, that `"work papers" means any papers "where you have records recorded on it and the common form of work papers are the culumnar column paper". Memorandum sheets could be work papers and "it might be almost anything from the taxpayer's books showing income or expenditures"'. 260 F.Supp. 216, 218 (S.D.N.Y.1966). Mr. Zakutansky's papers perfectly fit this description. They were columnar work papers and adding machine tapes showing the taxpayer's income and expenditures. This court can not find that legal character of papers depends upon the type of paper used. The respondents also contend that these could not be work papers because they were not the type of papers kept by an accountant to support a certified public audit. That these papers were not used to support a public audit is admitted, but neither were those in Pizzo, supra. Furthermore, an accountant or anyone else preparing an income tax return is asked to sign it as evidence that the information contained is true to the best of his knowledge. The papers sought here were of a type which should be kept to support that assertion. The court therefore finds that those papers identified by Mr. Zakutansky as having been prepared by him are `work papers' within the meaning of the case law.
 
 
 10
 Although these papers are work papers and originally belonged to Mr. Zakutansky, he may have relinquished his claim to them in good faith thereby giving the taxpayer rightful and indefinite possession of them. (See United States v. Cohen, 250 F.Supp. 472 (D. Nev.1965). Application of House, 144 F.Supp. 95 (N.D.Cal.1956). That is what the taxpayer contends happened here, but the court finds otherwise. Although there are no controlling cases, several courts have indicated that the court is not bound by the assertions of the taxpayer, accountant, or both. Deck v. United States, 119 U.S.App.D.C. 240, 339 F.2d 739 (1965), cert. den. 379 U.S. 967, 85 S.Ct. 660, 13 L.Ed.2d 560 (1965); Bouschor v. United States, 316 F.2d 451 (8th Cir. 1963); United States v. Boccuto, supra. In Boccuto, the court, relying on Sale v. United States, 228 F.2d 682 (8th Cir. 1956) held that work papers turned over to the taxpayer's attorney remained the accountant's property despite an affidavit to the contrary. In Bouschor, where the papers were held by the taxpayer's attorney, the court said at 316 F.2d 451, 459 (8th Cir. 1963):
 
 
 11
 `(T)hat Bouschor knew that the appearance of a Special Agent indicated that O'Brien's returns were being investigated for fraud, that it was Bouschor who as he pleaded, "directed said client to cause to be turned over to him all work papers" and that in consequence thereof the papers were delivered. This, although proper and necessary or at least desirable for Bouschor's representation of his client, cannot in itself serve to thwart investigation by the Internal Revenue Service.'
 
 
 12
 In Deck v. United States, 119 U.S. App.D.C. 240, 339 F.2d 739, 740 (1965) cert. den. 379 U.S. 967, 85 S.Ct. 660, 13 L.Ed.2d 560 (1965), the court stressed:
 
 
 13
 `It was not until after the tax investigation began that Kless showed any interest in the work papers then in the possession of Philips; until Kless requested them they were apparently regarded by all concerned as his property.'
 
 
 14
 The court recognizes that each of these cases has distinguishable features. In Bouschor and Boccuto the papers were held by the taxpayer's attorney. In Deck, the accountant asked for the papers return. They all indicate, however, that the court is not bound by either the taxpayer's or accountant's assertions concerning the papers sought.
 
 
 15
 The facts here convince the Court that the papers were and are the property of the accountant. They were in his possession until after he had been served with two subpoenas by the Internal Revenue Service. When first asked about the papers he stated that they belonged to him. Not until an apparent error in a subpoena provided an excuse did the accountant turn them over to the taxpayer. He had twice been called to produce them, and would have been obligated to do so had they remained in his possession. His later assertions that he never had any interest in the papers are unconvincing. Just as in Deck and Bouschor where the courts found the accountant's previously uninterrupted possession of the papers an important factor in determining their ownership, so does this court. It indicates that the transfer of the papers was a mere attempt to thwart the government investigation. As in Boccuto, the court finds the accountant's latest disclaimers of interest to be unconvincing in view of the circumstances of the transfer.
 
 
 16
 The `rightful possession' test advanced by some of the courts does not apply here because at the time the papers were transferred the transferor was under a moral, if not legal, obligation to provide them to the government. Both Mr. Zakutansky and Mr. Johnston were aware of this obligation and its possible consequences. Their natural desire to protect themselves or their clients is not sufficient to change the character of the papers and thereby defeat a legitimate government investigation.
 
 
 17
 The court therefore finds that the papers were not in the indefinite and rightful possession of the taxpayer and those papers identified as being prepared by Mr. Zakutansky should be held for examination by the petitioners."
 
 
 18
 This finding is basic to the decision of this case. It means that at the critical time, when the subpoena of the Internal Revenue Service was served on Zakutansky, the papers being sought were not in the unlimited and rightful possession of the taxpayer. This fact is inescapable. Moreover, it is significant to the extent that it is dispositive of the issues raised on this appeal. Therefore the order from which this appeal was taken is hereby affirmed.
 
 
 19
 Order affirmed.
 
 
 
 Notes:
 
 
 [1]
 Title 26 U.S.C. Section 7602 provides:
 For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of a transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized — (1) to examine any books, papers, records or other data which may be relevant or material to such inquiry.
 Title 26 U.S.C. Section 7604(a) provides:
 If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records or other data.
 
 
 [2]
 Italics supplied