UNITED STATES of America and Bruce
B. Mack, Revenue Agent, Internal Rev-
enue Service, Petitioners-Appellees,

v.

Richard J. WIDELSKI and Mary C.
Widelski, Respondents-Appellants.

No. 71–1089.

United States Court of ·Appeals,
Sixth Circuit.

Dec. 17, 1971.

**2**

Joseph F. Dillon, Detroit, Mich., for appellants; Raymond & Fletcher, Detroit, Mich., on brief.

John J. Raymond, Joseph F. Dillon, Detroit, Mich., of counsel.

John M. Brant, Tax Div., Dept. of Justice, Washington, D. C., for appellees; Johnnie M. Walters, Asst. Atty. Gen., Meyer Rothwacks, Crombie J. D. Garrett, John P. Burke, John M. Brant, Attys., Dept. of Justice, Tax Div., Washington, D. C., on brief.

Ralph B. Guy, Jr., U. S. Atty., Detroit, Mich., of counsel.

Before PHILLIPS, Chief Judge, and WEICK and EDWARDS, Circuit Judges.

PHILLIPS, Chief Judge.

An accountant prepared income tax returns for the taxpayers for the years 1949–59. The original and a carbon copy of each return were transmitted to the taxpayers at the appropriate time for signing and filing. The accountant retained for his files a carbon copy of each tax return and the related work papers. The accountant's copy of the returns were transferred by him to the taxpayers at their request after a tax investigation had begun.

This is an appeal from a District Court order granting judicial enforcement of an Internal Revenue Service administrative summons directing the taxpayers to produce these copies of their income tax returns for 1949–59.

We affirm.

The pertinent facts were summarized as follows in the findings of fact and conclusions of law of District Judge Talbot Smith:

*"Findings of Fact*

"1. In November of 1967, Mr. Stephen Jarosz, then a revenue agent of the Audit Division of the Internal Revenue Service, was assigned to investigate the income tax liabilities of Richard J. Widelski and Mary C. Widelski for the years 1960 through 1966, for which the Government has available their income tax returns. There is, however, no return available for 1962 although the Government admits that it was filed. As part of his investigation, Mr. Jarosz determined that the amount of dividends, interest and investments, as reported in the taxpayers' income tax returns was too high for Mr. Widelski's income bracket. This indicated a possibility of fraud and Mr. Jarosz, as is his duty in such situations, referred the case for a 'joint' investigation.

"2. Thus in December of 1967, special agent Charles Fillmore of the Intelligence Division was also assigned to the investigation. Special Agent Fillmore's first contact with the taxpayers was made on January 31, 1968, at which time Mr. Widelski stated to Agents Jarosz and Fillmore that a Mr. Ted Kustryk had been their accountant or bookkeeper since

1949 and had prepared all of their income tax returns for the years 1949 through 1959, inclusive.

"3. Immediately thereafter, Agent Fillmore contacted Mr. Kustryk and arranged an appointment for February 8, 1968. However, Mr. Kustryk adjourned that appointment, rescheduling it for February 12, 1968, at which time he said that he had been the Widelski's bookkeeper since 1949 but that he no longer had any copies of tax returns or work papers pertaining to them since Mr. Widelski, on February 9, 1968, had directed him to turn over the copies of returns and work papers in his possession to them. On February 10, 1968, Mr. Kustryk turned over these records, which consisted of his retained copies of all tax returns and work papers of the taxpayers' business as far back as 1949.

"4. Mr. Kustryk, on February 12, March 29, and May 3, 1968, informed one or both of the agents that he had prepared an income tax return and two copies thereof for each year, the original and a copy of which he mailed to Mr. Widelski, keeping one copy for his files attached to the related work papers. The copy of the Federal income tax returns for the years 1949 through 1959 and the work papers relating thereto remained in Mr. Kustryk's continual possession (the oldest work papers and returns for 20 years) until February 10, 1968. The taxpayers had never previously asked for these retained copies. This Court finds that these copies were part of Mr. Kustryk's work papers and remain his property.

"5. Subsequently, in 1968, a net worth computation concerning the taxpayers was prepared by the agents which showed an ostensible substantial understatement of income for the years 1960 through 1966, warranting the assertion of the civil fraud penalty, 26 U.S.C. § 6653(b). In October of 1968, Mr. Jarosz resigned his position and Mr. James Feaster, then a revenue agent, was assigned to take his place. He reported a net worth computation on the taxpayers for the years 1953 through 1959.

"6. In January, 1969, the Intelligence Division decided to drop its portion of the case which was concerned with possible criminal behavior resulting from an understatement of income.

"7. On May 29, 1968, the summons, issued under 26 U.S.C. § 7602 was duly served personally on the taxpayers by revenue agent Feaster. The summons called for production of

'The accountant's or taxpayer's retained copies of Federal Income Tax Returns prepared for Richard J. and Mary C. Widelski jointly, or Richard J. Widelski individually for the years 1949 through 1959 inclusive, which are in your possession or control.'

"8. The Government no longer has in its possession copies of the taxpayers' income tax returns for the years 1949 through 1959, inclusive. Therefore the copies of these returns are necessary to the Internal Revenue Service so that it may compare its findings of net worth of the taxpayers for the years 1949 through 1959 against said returns. These copies are thus essential to the investigation, 26 U.S.C. §§ 6501(b) and 6653(b).

"9. In December of 1969, Mr. Feaster resigned his position with the Internal Revenue Service. Subsequently, revenue agent Bruce B. Mack, one of the petitioners, was assigned to the tax investigation."

Following the refusal of the taxpayers to produce the requested returns, the Government commenced this action for enforcement. Taxpayers resisted enforcement, asserting their Fourth and Fifth Amendment rights. After considering the testimony of Internal Revenue Service agents and of Mr. Kustryk, the District Judge found that the documents sought were the property of the accountant. He further concluded that the last minute efforts of the taxpayers to ob-

tain custody of the returns did not give them such rightful possession as to enable them to raise their asserted claims.

■ Congress has provided a statutory plan by which the Internal Revenue Service is empowered to examine records and witnesses to ascertain tax liability.[1] Compliance with the summons can be compelled by the District Court.[2] This power is in the nature of the inquisitorial power of a grand jury and should be liberally construed. Falsone v. United States, 205 F.2d 734, 742 (5th Cir.), cert. denied, 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953).

■■ Work papers of an accountant are his property unless the contrary is shown. United States v. Zakutansky, 401 F.2d 68, 70 (7th Cir. 1968), cert. denied, 393 U.S. 1021, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969); In re Fahey, 300 F.2d 383 (6th Cir. 1961); Annot., 90 A.L.R.2d 784 (1963). The findings of the District Court that the accountant was the owner of the copies prepared by him for retention in his files does not appear to be clearly erroneous. See Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4

L.Ed.2d 1218 (1960); R. 52(a), Fed.R.Civ.P.

■ Had the returns been in the possession of the accountant when the summons was served, he could not have relied upon the taxpayers' privilege against self-incrimination to resist production in an action to enforce the summons. E. g., Rogers v. United States, 340 U.S. 367, 371, 71 S.Ct. 438, 95 L.Ed. 344 (1951); Hale v. Henkel, 201 U.S. 43, 69–70, 26 S.Ct. 370, 50 L.Ed. 652 (1906). Further, the lack of a proprietary interest in the copies on the part of the taxpayers or of a recognized privilege[3] between the taxpayers and their accountant would have denied the taxpayers the right to intervene in the summons enforcement proceeding. See Donaldson v. United States, 400 U.S. 517, 530–531, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971).

■ Thus the question before us is whether the action of the taxpayers in obtaining the copies prior to service of the summons permits them to raise a privilege that would have been denied to them had the documents remained in the hands of the accountant. We hold that, under the facts of this case, it does not.

1. 26 U.S.C. § 7602:
"Examination of books and witnesses
"For the purpose of ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or the liability at law or in equity of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary or his delegate is authorized—
"(1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry;
"(2) To summon the person liable for tax or required to perform the act, or any officer or employee of such person, or any person having possession, custody, or care of books of account containing entries relating to the business of the person liable for tax or required to perform the act, or any other person the Secretary or his delegate may deem proper, to appear before the Secretary or his delegate at a time and place named in the summons and to produce such books, papers, records, or other data, and to give such testimony, under oath, as may be relevant or material to such inquiry; and
"(3) To take such testimony of the person concerned, under oath, as may be relevant or material to such inquiry."

2. 26 U.S.C. § 7604(a):
"Enforcement of summons
"(a) Jurisdiction of district court.— If any person is summoned under the internal revenue laws to appear, to testify, or to produce books, papers, records, or other data, the United States district court for the district in which such person resides or is found shall have jurisdiction by appropriate process to compel such attendance, testimony, or production of books, papers, records, or other data."

3. The taxpayers do not assert any accountant-client privilege in this case. The accountant sometimes is referred to in the record as a bookkeeper.

At the time of the transfer, the returns had been in the custody of the accountant for periods ranging from nine to nineteen years. At no time prior to the transfer had the taxpayers shown any interest in securing the copies. It was only after Internal Revenue Service agents sought an interview with the accountant that taxpayers requested transfer of the returns to them. *See* United States v. Zakutansky, *supra*, 401 F.2d at 72; Deck v. United States, 119 U.S. App.D.C. 240, 339 F.2d 739, 740 (1964), cert. denied, 379 U.S. 967, 85 S.Ct. 660, 13 L.Ed.2d 560 (1965).

Taxpayers attack the District Court's characterization of the transfer as "frantic last minute efforts on their part to put the requested returns beyond the reach of the Government," pointing to the fifteen month interval between the transfer and the issuance of the summons. Under the facts of this case we find this time interval to be immaterial. The transfer was made at the request of the taxpayers no more than ten days after they had disclosed the identity of their accountant.

Taxpayers assert that, independent of property concepts, they may raise the privilege against self incrimination as to the production of documents which have been turned over to them with the consent of their accountant, relying on United States v. Cohen, 388 F.2d 464 (9th Cir. 1967). The Ninth Circuit view set forth in *Cohen* is against the weight of authority. E. g., United States v. Couch, 449 F.2d 141 (4th Cir., Oct. 12, 1971); United States v. Egenberg, 443 F.2d 512 (3d Cir. 1971); United States v. Zakutansky, *supra*, 401 F.2d 68 (7th Cir. 1968). To the extent that it may be inconsistent with the views expressed herein, we respectfully decline to follow it.

Taxpayers also rely upon Stuart v. United States, 416 F.2d 459 (5th Cir. 1969), which we find to be distinguishable on its facts. The records in that case belonged to the taxpayers and were delivered to the accountant for the sole purpose of providing a more convenient time and location for conducting the pending investigation.

It is to be emphasized that the District Court in the present case found that the Intelligence Division of the Internal Revenue Service has dropped that portion of the investigation concerned with possible criminal behavior. The case now before us presents an investigation of civil tax liability and perhaps civil fraud penalties. The possibility of any criminal prosecution of the taxpayers would appear to be remote. Nothing in this opinion is intended to affect the right of taxpayers to avail themselves of any Fifth Amendment defense that otherwise might be available in event of a criminal prosecution.

The final contention of the taxpayers is that the Government failed to show the unavailability of the original tax returns. We hold that the finding of the District Court on this point is not clearly erroneous. R. 52(a), Fed.R.Civ. P.

Affirmed.