UNITED STATES of America et al., Petitioners,

v.

A. Burton HANKINS et al., Respondents,

v.

Robert Lewis SMITH, Intervenor.

UNITED STATES of America et al., Petitioners,

v.

HANKINS LUMBER CO. et al., Respondents,

v.

Robert Lewis SMITH, Intervenor.

UNITED STATES of America et al., Petitioners,

v.

HANKINS LUMBER CO., INC., et al., Respondents.

UNITED STATES of America et al., Petitioners,

v.

A. Burton HANKINS et al., Respondents.

Nos. WC 75–107–S—WC 75–110–S.

United States District Court, N. D. Mississippi, W. D.

July 15, 1976.

---

H. M. Ray, U. S. Atty., William M. Dye, Jr., Asst. U. S. Atty., Oxford, Miss., for petitioners.

Hugh C. Montgomery, Jr., Dossett, Magruder & Montgomery, Jackson, Miss., J. N. Raines, Memphis, Tenn., Tommy M. McWilliams, Townsend, McWilliams & Holladay, Drew, Miss., Paul P. Lipton, Lipton & Petrie, Milwaukee, Wis., for respondents.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

These related matters came on for a consolidated hearing before the court on March 1, 1976, pursuant to the court's orders to show cause; the parties were present by counsel; evidence was presented and the parties were heard. Due consideration having been had, the court enters the following findings of fact and conclusions of law.

### A. *Findings of Facts.*

1. The petitioner Robert E. Grant is a special agent of the Intelligence Division of the Internal Revenue Service, United States Treasury Department, with post of duty in Jackson, Mississippi.

2. In his capacity as a special agent Grant was assigned to conduct an investigation of the federal income tax returns and liabilities of A. Burton Hankins of Grenada, Mississippi, for the years 1971, 1972, and 1973. The investigation also included the 1973 federal income tax return and liability of Hankins Lumber Company, Inc., Grenada, Mississippi, a Mississippi corporation of which A. Burton Hankins is the president and majority shareholder.

3. Special Agent Grant's investigation is a joint investigation being conducted in coordination with the Audit Division of the Internal Revenue Service. The Audit Division representative assigned to the investigation is Revenue Agent John Ervin.

4. The investigation is directed toward the 1971, 1972 and 1973 tax years of A. Burton Hankins and 1973 for the corporation. However, because of the complicated financial history of the taxpayers, the agents also need to determine Hankins' correct tax liabilities for the years 1969 and 1970.

5. From approximately 1957 until November 19, 1971, A. Burton Hankins and his brother, Bewel A. Hankins, operated a jointly owned partnership, the Hankins Lumber Company, which engaged in the planer mill and lumber business in Grenada County, Mississippi. In 1971, the partnership had 98 employees, assets of about $1 million, gross receipts of more than $3 million, and a payroll of almost one-half million dollars. The company purchased an average of more than 30 tracts of timber a year and during 1971, produced around 27 million feet of lumber.

6. In connection with their lumber operation, the Hankins brothers were also joint owners of two Mississippi corporations, Hankins Lumber Sales, Inc., which was incorporated on February 21, 1964, and Logging Industries, Inc., which was incorporated in April, 1966. As of April 26, 1972, the net assets of these corporations were appraised at $202,358.69, for Hankins Lumber Sales, Inc., and $52,698.32, for Logging Industries, Inc.

7. The partnership maintained various business ledgers, journals and books of account. These records, which are the subject of Civil Action No. WC 75–108–S, are in the possession of A. Burton Hankins to whom the summons at issue there is directed.

8. On November 19, 1971, Bewel A. Hankins died at the age of 43. His last will and testament, which named his brother A. Burton Hankins as executor of the estate, was contested on November 23, 1971, by his widow, Frances Hankins. *In re Estate of Bewel A. Hankins,* No. 12,200 (Grenada Cty., Miss.Ch.Ct. May 8, 1971). Mrs. Hankins was represented in that matter by the respondent, Attorney Tommy M. McWilliams of Drew, Mississippi.

9. On January 11, 1972, Mrs. Hankins petitioned the Grenada County Chancery Court for appointment as temporary administratrix of the Estate of Bewel A. Hankins. On January 21, 1972, the Chancery Court ordered the will admitted to probate and appointed A. Burton Hankins Executor of the Estate of Bewel A. Hankins.

10. On February 11, 1972, Frances Hankins renounced the will and elected to receive a one-fourth share of the net estate.

11. On August 11, 1972, Mrs. Hankins filed a petition to terminate her interest in the Estate of Bewel A. Hankins which reflected the sale of her one-fourth interest in Hankins Lumber Company to A. Burton Hankins, the surviving partner. On August 12, 1972, the Chancery Court granted this petition.

12. On October 18, 1972, the Chancery Court granted a petition by A. Burton Hankins to purchase the remaining portion of the Estate's interest in the Hankins Lumber Company partnership.

13. In his capacity as Executor of the Estate of Bewel A. Hankins, A. Burton Hankins created or caused to be created and maintained various books, records, and papers pertaining to the administration, probate and settlement of the Estate. These records include the papers relating to preparation and filing of the Federal and Mississippi estate tax returns, appraisal of the assets of the estate, payment of creditors, settlement of the will contest, and closing out the Estate. These records, which are the subject of Civil Action No. WC 75–110–S, are in the possession of Robert Lewis Smith and A. Burton Hankins, to whom the summonses at issue therein are directed.

14. During the pendency of the will contest, Attorney McWilliams, on behalf of Frances Hankins, caused an audit of the partnership books and records to be performed by Certified Public Accountant William S. Boswell, Drew, Mississippi. This audit resulted in the creation of reports, schedules, memoranda, correspondence, and other writings by Certified Public Account-

ant Boswell. In connection with the will litigation, Attorney McWilliams and his law firm also prepared or caused to be prepared certain documents, reports, correspondence, files, etc.

15. Although the will litigation between Mrs. Hankins and A. Burton Hankins, Executor and surviving partner, was concluded by agreement in about August, 1972, Certified Public Accountant Boswell continued to retain his audit papers until about June 26, 1974, and the papers of the widow's lawyers (McWilliams and his law firm) were retained by them until July 2, 1974.

16. On October 27, 1972, the Hankins Lumber Company was incorporated as a Mississippi corporation with A. Burton Hankins as president and majority shareholder. This implemented a decision which had been made prior to September 15, 1972.

17. The respondent, Robert Lewis Smith, is a Certified Public Accountant in Grenada, Mississippi. He prepared and signed the 1971 Hankins Lumber Company federal partnership return as well as the 1971 and 1972 personal federal income tax returns of A. Burton and Juanita Hankins. He also prepared and signed the federal estate tax return for the Estate of Bewel A. Hankins and the 1973 federal corporate income tax return for Hankins Lumber Company, Inc.

18. The evidence reflects that prior to October, 1973, Smith was in the private practice of accountancy with an office in Grenada, Mississippi. However, on or about October 1, 1973, Smith sold his accounting practice and moved his books, records, and workpapers and the corporate books and records of Hankins Lumber Company, Inc., to an office in the offices of Hankins Lumber Co., Inc., in Elliott, Mississippi.

19. In performing the various accounting services described above, Smith created and retained various accounting workpapers, books, and records. These workpapers and records, which are the subject of Civil Action Nos. WC 75–109–S and WC 75–110–S, are in the possession of Robert Lewis Smith, to whom one of the summonses at issue therein was directed.

20. In November of 1973, Revenue Agent Ervin began an audit of the 1971 partnership of Hankins Lumber Company and the individual returns of the two partners which would reflect the distribution of the partnership income from that year. In addition he undertook an audit of the returns of three closely held Hankins corporations with fiscal years ending March 31, 1972. Revenue Agent Ervin conducted the audits with the assistance of CPA Smith, who represented Hankins and the companies. In January, 1974, Revenue Agent Ervin advised CPA Smith that he needed to examine the subsequent year records (1972) of the lumber company. Smith advised Revenue Agent Ervin that Attorney Hugh Montgomery had the 1972 records in Jackson, Mississippi, and was making an analysis of them which would be helpful to Ervin and facilitate his audit. Ervin was able to work around this delay by conducting the audits of the closely held corporations. However, by May, 1974, he had completed the collateral audits and continued to request the 1972 lumber company records.

21. In late March or early April of 1974, the taxpayer, A. Burton Hankins, requested Attorney Tommy M. McWilliams to turn over to the taxpayer all books, records, and papers relating to the Boswell audit of the partnership and the will contest. This was ostensibly in furtherance of the settlement of the Estate reached in 1972.

22. On May 7, 1974, A. Burton Hankins petitioned the Chancery Court for approval of the final accounting of the Estate of Bewel A. Hankins and for his discharge as Executor of the Estate.

23. On May 8, 1974, the Chancellor of the Grenada County Chancery Court entered an order approving the final accounting and disbursements of assets and ordering the Estate of Bewel A. Hankins closed and the Executor, A. Burton Hankins, released and discharged.

24. On June 13, 1974, Revenue Agent Ervin met with Attorney Montgomery and advised him that although there were discrepancies in the partnership return in ex-

cess of $100,000 for 1971, he could not complete the 1971 audit without inspecting the 1972 records. Montgomery appeared to acquiesce in the 1971 discrepancies but insisted on closing the audit for that year before producing the 1972 lumber company records. Revenue Agent Ervin was unwilling to close 1971 without an inspection of the 1972 records. At that point Attorney Montgomery advised Revenue Agent Ervin that he would have to consult with his client, A. Burton Hankins, about producing the 1972 records.

25. On June 26, 1974, Attorney McWilliams sent a letter to CPA Boswell acknowledging delivery from Mr. Boswell to McWilliams' law firm of all reports, schedules, memoranda, correspondence, and other writings relating to the will contest. On that same date Mr. McWilliams drafted a letter to Mr. Burton Hankins agreeing to the turnover of all Boswell papers as well as all McWilliams' documents, reports, correspondence, files, etc. The actual turnover, according to Attorney McWilliams, took place on July 2, 1974, when Attorney McWilliams physically delivered these records to A. Burton Hankins.

26. Revenue Agent Ervin, in the meantime, had had an appointment with Attorney Montgomery on July 3, 1974, to learn if the taxpayer was going to produce the 1972 records. This appointment had to be cancelled and Revenue Agent Ervin was then contacted by Attorney Montgomery on July 8, 1974, and advised that the 1972 records would not be produced because they might tend to incriminate A. Burton Hankins.

27. Based upon the discrepancies previously described, certain informant information items, and Attorney Montgomery's representation that production of the 1972 records would be refused because they might tend to incriminate the taxpayer, Revenue Agent Ervin determined the likelihood of tax fraud, and on July 21, 1974, referred the matter to the Intelligence Division where the present joint investigation was initiated.

28. Thereafter, in furtherance of the investigation Special Agent Grant determined

that it would be necessary to inspect (A) the partnership records of Hankins Lumber Company; (B) the records of the Estate of Bewel A. Hankins; (C) the corporate records of Hankins Lumber Company, Inc.; and (D) the Boswell audit papers of the Hankins Brothers partnership. To that end he issued seven summonses to the various parties to these transactions requiring their appearance, testimony, and production of the various books and records.

29. Each of the summoned parties appeared as required by the summonses, but declined on varying grounds to testify or, with one exception, to produce the summoned documents. Special Agent Grant did not pursue the matter by asking specific questions. The exception was the production of all required corporate books and records of Hankins Lumber Company, Inc., except for the accounting workpapers used to prepare the 1973 corporate return.

30. Each of the respondents in these four cases, with the exceptions of Attorneys Hugh C. Montgomery and Tommy M. McWilliams, acknowledged to the court that he had in his possession, in whatever capacity, the summoned records. Respondent Montgomery denied that he had in his possession at the time of the issuance of the summons to him the records demanded by that summons (the Boswell audit papers). The government accepted that representation and deemed the *duces tecum* provision of the summons to Montgomery complied with.

31. The government's own proof demonstrated that Attorney McWilliams had turned over all his records relating to the will contest (including the Boswell audit papers) to A. Burton Hankins in furtherance of the estate settlement agreement. The only item still in McWilliams' possession is the original settlement agreement between Frances Hankins and A. Burton Hankins. McWilliams was unwilling to produce that document because his client had requested him not to (on grounds not otherwise specified).

32. Special Agent Grant testified that Mrs. Frances Hankins had cooperated with

the Internal Revenue Service completely in the investigation and had not refused to give information or invoked any privilege.

33. Each of the individual respondents has knowledge and information pertaining to the tax liabilities under investigation. In addition, Hankins Lumber Company, Inc., has employees with knowledge and information pertaining to the tax liabilities under investigation.

34. The government presented the testimony of Leonard Parnell, a former employee of Certified Public Accountant Smith, Special Agent Grant, Revenue Agent Ervin, and Attorney Tommy M. McWilliams and offered into evidence 18 exhibits, all of which were received. In addition the government proposed several stipulations of fact which were agreed to by respondents in open court.

35. The respondents (other than Attorney McWilliams who was called as a government witness) did not testify and presented no witnesses. The only evidence presented by the respondents consisted of six documents relating to the administration and settlement of the Estate of Bewel A. Hankins and a letter from the District Director of Internal Revenue accepting the estate tax return of the Estate of Bewel A. Hankins as filed.

36. No recommendation for criminal prosecution has been made by the Internal Revenue Service to the United States Department of Justice in this investigation.

### B. *Conclusions of Law.*

1. The court has jurisdiction over these actions and the parties pursuant to Int.Rev. Code of 1954, §§ 7402(b), 7604(a).

■ 2. Special Agent Grant is a delegate of the Secretary of the Treasury authorized to issue the summonses involved in these actions. Int.Rev.Code of 1954, § 7602; Treas.Reg. § 301.7602–1; 26 C.F.R. § 301.-7602–1 (1975).

3. The government has demonstrated by a preponderance of credible evidence that the joint investigation of Special Agent Grant and Revenue Agent Ervin is being conducted for a legitimate purpose: The determination of the correct tax liabilities of A. Burton Hankins and Hankins Lumber Co., Inc., and the correctness of their federal income tax returns; that the summoned records and testimony may be relevant to the liabilities and returns under investigation; and that the information sought is not already in the government's possession. *United States v. Powell,* 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964).

4. With one exception the government has also demonstrated that in each instance the administrative steps required by the Internal Revenue Code have been followed. *United States v. Powell, supra.*

■ 5. The exception pertains to the summons issued on March 14, 1975, to Hugh C. Montgomery. The summons issued to Mr. Montgomery was issued and served in Jackson, Mississippi, in the Southern Judicial District of Mississippi and required Mr. Montgomery's appearance in that same district. Under 26 U.S.C. §§ 7402(b), 7604(a) jurisdiction and venue for judicial enforcement of such a summons is in "the United States district court for the district in which such person resides or *is found* . . . ." (Emphasis added) (*Id.* at § 7402(b)). As reflected in the government's opposition to respondent Montgomery's post-trial attack on the jurisdiction of this court, Mr. Montgomery was permitted by Special Agent Grant, as a personal accommodation to Mr. Montgomery, to respond to the summons at the office of the Internal Revenue Service, Room 315, Federal Building, 200 Washington Street, Greenwood, Mississippi, within the Northern District of Mississippi and the jurisdiction of this court. It was, therefore, within this district and the jurisdiction of this court that Mr. Montgomery was to be found when he failed to comply with the summons addressed to him. Moreover, since this summons was part and parcel of an investigation involving six other related summonses, all issued, returnable, and enforceable in the Northern District of Mississippi, it was consolidated with the other summonses by the government for enforcement in this dis-

trict. The respondent failed to raise this issue until the case had been consolidated and tried by this court and he was certainly to be found in this district at the time of trial when he appeared in person. Therefore the court had and has *in personam* jurisdiction over Mr. Montgomery pursuant to 26 U.S.C. §§ 7402(b) and 7604(a). Furthermore, the respondent is estopped from contesting the jurisdiction of this court at this time, by virtue of his waiver of any timely objection.

6. None of the respondents has sustained his burden of showing that the summonses here were issued in bad faith or for an improper purpose. The government has demonstrated and the court finds that each of the summonses was issued in good faith and for a proper purpose. *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *United States v. Powell, supra.*

■ 7. With respect to the testimonial provisions of the summonses at issue, none of the respondents is entitled to invoke, in a blanket manner, his Fifth Amendment privilege against self-incrimination or his attorney-client privilege as a bar to the giving of all testimony. *United States v. Sullivan,* 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037 (1927); *United States v. Ellsworth,* 460 F.2d 1246 (9th Cir. 1972); *United States v. Roundtree,* 420 F.2d 845 (5th Cir. 1969). *See also United States v. Sigelbaum,* 27 Am.Fed.Tax R.2d 71–762 (S.D.Fla.1970), *aff'd per curiam,* 435 F.2d 1313 (5th Cir. 1971). Nor may any respondent properly invoke another persons' personal privilege against self-incrimination as a bar to the giving of his own testimony. *Schulze v. Rayunec,* 350 F.2d 666 (7th Cir.), *cert. denied,* 382 U.S. 919, 86 S.Ct. 293, 15 L.Ed.2d 234 (1965); *Geurkink v. United States,* 354 F.2d 629 (7th Cir. 1965); *Genecov v. Federal Petroleum Board,* 146 F.2d 596 (5th Cir. 1944) *cert. denied,* 324 U.S. 865, 65 S.Ct. 913, 89 L.Ed. 1420 (1945); *United States v. Conte,* 300 F.Supp. 73 (D.Del.1969); *United States v. Learner,* 298 F.Supp. 1104 (S.D.Ill.1969); *United States v. Zakutansky,* 278 F.Supp. 682 (N.D.Ind.),

*aff'd,* 401 F.2d 68 (7th Cir. 1968); *In re Fahey,* 192 F.Supp. 492 (W.D.Ky.), *aff'd,* 300 F.2d 383 (6th Cir. 1961). Consequently, orders will be issued requiring each individual respondent to appear before Special Agent Grant or his authorized representative to be sworn and to give testimony or to claim a *personal* privilege as to particular questions. An order will also issue requiring the respondent, Hankins Lumber Company, Inc., to designate officers, agents, or employees with knowledge of the required information to appear before Special Agent Grant or his authorized representative to be sworn and to give the required testimony. *United States v. Kordel,* 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970). The corporation has, of course, no Fifth Amendment privilege against self-incrimination and will be required to produce knowledgeable witnesses who will not be incriminated by their testimony. *Id.*

■ 8. With respect to respondent McWilliams' invocation of attorney-client privilege on behalf of his client, Frances Hankins, as a bar to his testimony or production of the estate settlement agreement, the burden of proving both the existence and the extent of the attorney-client privilege is squarely upon the party claiming it. *Bouschor v. United States,* 316 F.2d 451 (8th Cir. 1963); *Colton v. United States,* 306 F.2d 633 (2nd Cir. 1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *United States v. Kovel,* 296 F.2d 918, 923 (2d Cir. 1961); *Mattson v. Cuyuna Ore Co.,* 178 F.Supp. 653, 654 (D.Minn.1959). Not only did McWilliams fail to demonstrate the existence of any privileged communications between himself and his client, he failed even to demonstrate that the client, to whom any such privilege belongs, desired its invocation. Indeed, the government's proof was to the contrary. Finally, even assuming the existence of a privileged relationship, assuming confidential communications between lawyer and client for the purpose of litigation or legal advice, assuming that no waiver of privilege had occurred, and assuming the client desired the privilege to be asserted, it is clear that the

estate settlement agreement and the details of the Boswell audit could under no circumstances be deemed privileged since they were shared with an adversary of the client and in no way could be construed as "confidential communications." *United States v. Hodgson,* 492 F.2d 1175 (10th Cir. 1974); *United States v. Finley,* 434 F.2d 596 (5th Cir. 1970); *In re Semel,* 411 F.2d 195 (3d Cir.), *cert. denied,* 369 U.S. 905, 90 S.Ct. 220, 24 L.Ed.2d 181 (1969); *United States v. Bartone,* 400 F.2d 459, 461 (6th Cir. 1968), *cert. denied,* 393 U.S. 1027, 89 S.Ct. 631, 21 L.Ed.2d 571 (1969); *United States v. Harrington,* 388 F.2d 520 (2d Cir. 1968); *NLRB v. Harvey,* 349 F.2d 900 (4th Cir. 1965); *United States v. McDonald,* 313 F.2d 832 (2d Cir. 1963); *Colton v. United States,* 306 F.2d 633 (2d Cir. 1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *McFee v. United States,* 206 F.2d 872 (9th Cir. 1953); *Pollock v. United States,* 202 F.2d 281 (5th Cir. 1953); *United States v. Long,* 328 F.Supp. 233 (E.D.Mo.1971); *United States v. Mellen,* 28 Am.Fed.Tax R.2d 71–5392 (N.D.Ga.1971); *United States v. Dickinson,* 308 F.Supp. 900 (D.Ariz.1969); *United States v. Berger,* 16 Am.Fed.Tax R.2d 5224 (S.D.Fla.1965); *In re Wasserman,* 198 F.Supp. 564 (D.D.C.1961). *See also United States v. Kovel,* 296 F.2d 918, 922 (2d Cir. 1961); *Falsone v. United States,* 205 F.2d 734 (5th Cir.) *cert. denied,* 346 U.S. 864, 74 S.Ct. 103, 98 L.Ed. 375 (1953). Accordingly, an order will be issued requiring Mr. McWilliams to appear before Special Agent Grant or his authorized representative to be sworn to testify and to produce for inspection and copying the estate settlement agreement.

■ 9. With respect to the accounting workpapers generated by respondent Smith's preparation of the 1973 Hankins Lumber Company, Inc., federal corporate income tax return, the only evidence before the court is that Mr. Smith was an employee or officer of the corporation at the time of its preparation. Such workpapers are therefore not the personal books or records of Mr. Smith held in a personal or private capacity. *United States v. Shlom,* 420 F.2d 263 (2d Cir. 1969). They are rather corporate records which enjoy no privileged status and which are in the constructive possession of the corporation and its president, A. Burton Hankins, and in the actual possession of Mr. Smith in his representative capacity as an employee of the corporation. Accordingly, an order will be issued requiring the corporation, its president, A. Burton Hankins, and its employee, Robert Lewis Smith, to appear before Special Agent Grant or his authorized representative to produce the 1973 corporate federal income tax return workpapers.

■ 10. With respect to the records of the Estate of Bewel A. Hankins, it is clear that they were created and maintained in A. Burton Hankins' representative capacity as Executor of the Estate and cannot enjoy the protection of his personal privilege against self-incrimination. *United States v. Egenberg,* 443 F.2d 512 (3d Cir. 1971). *See also Bellis v. United States,* 417 U.S. 85, 94 S.Ct. 2179, 40 L.Ed.2d 678 (1974); *Grant v. United States,* 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913); *Wheeler v. United States,* 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309 (1913); *United States v. Cobb,* 36 Am.Fed.Tax R.2d 75–5062 (6th Cir. 1975). Moreover, as records required to be created and maintained by the probate laws of Mississippi, they would not be entitled to the protection of Hankins' Fifth Amendment privilege. *Shapiro v. United States,* 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787 (1948); *United States v. San Juan,* 37 Am.Fed.Tax R.2d 76–810 (D.C.Vt.1975). The fact of the termination of the estate is immaterial since it is the nature of the records and not the status of the possessor or owner which controls. *Shapiro v. United States, supra; United States v. San Juan, supra.* Accordingly, an order will be issued requiring A. Burton Hankins to appear before Special Agent Grant or his authorized representative to produce all records of the Estate of Bewel A. Hankins.

■ 11. With respect to the Boswell audit papers acquired by A. Burton Han-

kins from Attorney Tommy M. McWilliams, ostensibly in furtherance of the estate settlement agreement, the chronology of events described in the findings of fact above suggest that the taxpayer was embarked upon a course of action designed to obtain potential evidence against him before it fell into the hands of the Internal Revenue Service. Such third-party evidence obtained in such manner and for such purpose cannot be shielded from government inspection. *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The government's proof reflects that at the time of the settlement agreement in 1972 and at the time A. Burton Hankins sought possession of these records (and Mr. McWilliams agreed to their turnover) in March or April of 1974, Mr. Hankins was still the Executor of the Estate of Bewel A. Hankins. Respondent Hankins offered absolutely no evidence showing that he sought and obtained these records in any other capacity than as Executor of the Estate and the court concludes that they are records of the Estate acquired by Mr. Hankins in his representative capacity. For this reason they cannot be withheld on the basis of Mr. Hankins' personal privilege against self-incrimination. Accordingly, an order will be issued requiring A. Burton Hankins to appear before Special Agent Grant or his authorized representative to produce all books, records, and papers delivered to him by attorney Tommy M. McWilliams in connection with the settlement of the will contest.

12. With respect to the books and records of the Hankins Lumber Company partnership, the evidence shows that the company was a large, many-faceted commercial venture of long duration, with numerous employees, substantial assets, and impressive gross receipts. Its interrelationship in the lumber business with two substantial closely held corporations (each owned jointly by the same partners) reflects the structured and organized nature of the business. The incorporation of the successor corporation within months of the termination of the partnership by the death of Bewel A. Hankins emphasizes the continuity and organized nature of the business. Based upon the foregoing the court concludes that the Hankins Lumber Company was not the "small family partnership" envisioned by the dictum in the Supreme Court's decision in *Bellis v. United States,* 417 U.S. 85 at 101, 94 S.Ct. 2179 (1974), which the court said *might* have dictated a different result, *i. e.,* permitted invocation of a former partner's privilege against self-incrimination to bar compelled production of the records of the former partnership. *Accord, United States v. Cobb,* 36 Am. Fed.Tax R.2d 75–5062 (6th Cir. 1975) (two and three member law partnerships); *United States v. Mahady & Mahady,* 512 F.2d 521 (3d Cir. 1974) (four brother law partnership). The partnership records do not, of course, lose that characteristic because of the termination of the partnership. *Bellis v. United States, supra; Grant v. United States,* 227 U.S. 74, 33 S.Ct. 190, 57 L.Ed. 423 (1913); *Wheeler v. United States,* 226 U.S. 478 (1913). Thus, A. Burton Hankins' personal privilege against self-incrimination is not available to bar production of the partnership records. Accordingly, an order will be issued requiring A. Burton Hankins to appear before Special Agent Grant or his authorized representative to produce the books and records of the Hankins Lumber Company partnership.

Petitioners' attorneys may submit to the court for entry within 10 days appropriate orders to give effect to the decision of the court contained herein.